1  WAYNE C. MAYER (62031)
   Law Offices of Wayne C. Mayer
2  4619 Van Dyke Avenue
   San Diego, CA 92116
3  (619) 281-9263
   fax (619) 281-2963
4

5  Attorney for Material Witness:     JOSE GUADALUPE GONZAGA CEJA

6

7                       UNITED STATES DISTRICT COURT

8                      SOUTHERN DISTRICT OF CALIFORNIA

9

10

11 | UNITED STATES OF AMERICA,        ) Case No.: 08 CR 2034 IEG
                                      )
12 |        Plaintiff,                ) NOTICE OF MOTION AND MOTION FOR
                                      ) VIDEOTAPED DEPOSITION OF
13 |   vs.                            ) MATERIAL WITNESS(ES) JOSE
                                      ) GUADALUPE GONZAGA CEJA
14 | SOLEDAD MARTINEZ JIMENEZ aka     )
     Soledad Martinez Sandoval, ERNEST) DATE: 7/15/08
15 | GUERRERO RIVERA,                 ) TIME: 9:30 a.m.
                                      ) DEPT: Porter
16 |        Defendant.

17

18      PLEASE TAKE NOTICE that on July 15, 2008 at 9:30 a.m. or as soon thereafter as

19 counsel may be heard, material witness JOSE GUADALUPE GONZAGA CEJA (hereafter

20 "Material Witness") by and through his counsel, Wayne C. Mayer will bring a motion for a court

21 order to take the Material Witnesses' videotaped deposition.

22 /////

23 /////

24 /////

25 /////

                                         1                              08 CR 2034 IEG

**MOTION**

Material Witness, pursuant to Federal Rules of Criminal Procedure, Rule 15, and Title 18 U.S.C. sec. 3144, hereby moves this court for an order to take his deposition by videotape and release him at the conclusion of the deposition. If the Court denies this motion, then Material Witness further requests the United States Attorney's office provide the witness with a Statement of Reasons in Support of Custody in accordance with Federal Rules of Criminal Procedure, Rule 46(g).

This motion is based upon this Notice, the Memorandum of Points and Authorities in Support thereof, the Declaration of Wayne C. Mayer, the files and records in the above entitled cause, and any and all other information brought to the Court's attention prior to or during the hearing on this motion.

Dated:  June 23, 2008                    Respectfully submitted,


                                         s/ Wayne C. Mayer
                                         Wayne C. Mayer
                                          Attorney for Material Witness
                                         JOSE GUADALUPE GONZAGA CEJA

1  WAYNE C. MAYER (62031)
   Law Offices of Wayne C. Mayer
2  4619 Van Dyke Avenue
   San Diego, CA 92116
3  (619) 281-9263
   Fax (619) 281-2963
4

5  Attorney for Material Witnesses:   JOSE GUADALUPE GONZAGA CEJA

6

7                UNITED STATES DISTRICT COURT

8                SOUTHERN DISTRICT OF CALIFORNIA

9

10

| | | |
|---|---|---|
| 11 | UNITED STATES OF AMERICA, | ) Case No.: 08 CR 2034 IEG |
| 12 | Plaintiff, | ) POINTS AND AUTHORITIES IN SUPPORT |
| 13 | vs. | ) OF JOSE GUADALUPE GONZAGA CEJA's ) MOTION FOR VIDEO TAPED ) DEPOSITION |
| 14 | SOLEDAD MARTINEZ JIMENEZ aka Soledad Martinez Sandoval; ERNEST | ) |
| 15 | GUERRERO RIVERA, | ) DATE: July 15, 2008 ) TIME: 9:30 a.m. ) DEPT: Magistrate Papas |
| 16 | Defendant(s). | |

17

18    Material witness JOSE GUADALUPE GONZAGA CEJA (hereafter "Material Witness)

19  by and through his counsel, Wayne C. Mayer, submits the following Memorandum of Points and

20  Authorities in support of his motion for a court order to take the Material Witness' videotaped

21  deposition.

22  /////

23  /////

24  */////*

25

                                                    -1-                          08 CR 2034 IEG

# I.

# INTRODUCTION

On or about June 3, 2008, the material witness (es) was detained by the United States Border Patrol in connection with the arrest of defendants in the above-entitled case. The defendants were charged with intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens had come to, entered and remained in the United States in violation of law, did transport and move said aliens within the United States in furtherance of such violation of law, in violation of Title 8 U.S.C. sec. 1324 (a)(2)(B)(ii). The material witness was observed/ discovered along the United States and Mexico border.

The following is taken from the discovery made available to date.

Agent Monroy with the United States Border Patrol was assigned as the West Scope operator in the Imperial Beach area of responsibility. The West Scope operator's area of observation covers from the International Boundary Line in an area known as Goat Canyon to the beach at Border Field State Park, which is approximately 4.5 to 5 miles west of the port of entry at San Ysidro, California. Alien smuggling through the use of horses has been a common problem in this area of operation. Due to the proximity of the stables to the United States/Mexico International Border, smugglers are using these stables to further the illegal entry of aliens into the United States via horseback riding.

Agent Monroy observed through her binoculars two horses with riders traveling westbound. The first horse had two riders, a male and a female. The second horse had a single male rider wearing blue jeans and a white long sleeve shirt. It appeared the three riders were together as a group as they were only a few feet away from each other. When the horses reached an area known as Research Trailer road north of the border, they turned south towards an area known as Goat Canyon.

1   A few minutes later Agent Monroy observed the horse with two riders by the hitching
2   post area without the other horse and rider. She looked further south and saw the single heading
3   further south in the creek bed area. The single rider was on a riding trail that leads behind a hill
4   to an area known as "The Bunkers Hill" and was out of view. Agent Monroy looked away again
5   to work other traffic in the area.

6   Agent Monroy subsequently observed the two riders head south on the same trail as the
7   single rider toward the west side of "Bunkers Hill". A few minutes later, an individual who
8   initially appeared to be the single rider came back north out of the brush and headed toward the
9   couple on the horse. They all stopped briefly a few feet from each other and conversed for a
10  couple of minutes. Again, it appeared to Agent Monroy they were together. Agent Monroy then
11  looked away again to work other illegal activity in the area.

12  When Agent Monroy looked back at the horse riders, she observed that the individual
13  who appeared to be the single rider was having trouble on the horse. The horse was running
14  around in circles and the rider did not appear to have control of the horse. Agent Monroy
15  realized that the rider was not the same person who she saw ride south to the Bunkers Hill area.
16  In fact, the rider was now wearing a short sleeve checkered shirt. Agents have learned that the
17  smugglers use a practice known as "swapping out" riders to which an individual rides a horse to
18  the border and, in concealed area, switches with the smuggled alien so it looks like the same
19  rider is on the horse.

20  Agent Monroy observed that the couple on the other horse were trying to call to the
21  single rider. A few seconds later Agent Monroy saw the horse on a fast run south without the
22  single rider on him. Agent Monroy advised over radio to other Border Patrol that a rider was
23  down and the horse was running south. The couple on the horse also headed toward the direction
24  of the single rider, who was down in the brush.

25

1    Border Patrol Agent Leyva responded to the area. When the couple on the horse saw the
2    Border Patrol vehicle approach, they turned their horse around and headed south in the opposite
3    direction.  When Agent Leyva approached the downed rider, the agent identified himself as a
4    Border Patrol Agent, and in the English language, asked him how he was doing and that if he
5    was okay.  The subject seemed confused and did not appear to understand Agent Leyva's
6    question.  Agent Leyva then asked the subject in the Spanish language what happened.  The
7    individual later identified as the material witness JOSE GUADALUPE GONZAGA CEJA stated
8    he had fallen from a horse.  When the Agent asked if he knew how to ride a horse GONZAGA
9    stated he did not.  When Agent Leyva asked GONZAGA where he had crossed, GONZAGA
10   replied that he had just crossed through the border fence and he was being smuggled on
11   horseback.  GONZAGA stated that an unidentified subject had taken the horse to the
12   international border fence where they both switched off.  The unidentifed subject was not
13   located.  Agent Leyva then took GONZAGA into custody.
14    Agent Leyva was then directed to the location of the couple riding a horse observed
15   earlier by Agent Monroy.  Agent Leyva made contact with the two subjects in a marked Border
16   Patrol vehicle.  He hand motioned for the subjects to stop.  Agent Leyva identified himself along
17   with Agent Gonzalez as Border Patrol Agents and questioned them regarding their citizenship
18   and nationality.  The male subject later identified as defendant ERNEST GUERRERO RIVERA
19   stated that he is a United States citizen and produced a California driver license bearing his name
20   and photograph and a tattered untied States birth certificate.  The female subject later identified
21   herself as SOLEDAD MARTINEZ JIMENEZ stating she is a United States citizen and produced
22   a California identification card bearing the name given and a photograph in her likeness.
23    The Agents questioned the subjects regarding any knowledge of GONZAGA's
24   smuggling attempt. Both subjects denied knowing GONZAGA, however, both stated that
25   GONZAGA was attempting to attach himself to them.  Both GUERRERO and MARTINEZ had

criminal records.  GUERREO has an extensive criminal history and MARTINEZ admitted she has just served time for aiding and abetting smuggling of illegal aliens.

Defendant MARTINEZ was advised of her constitutional rights and agreed to waive them and be questioned without representation.   She admitted to prior smuggling arrests and caring a cellular phone with the name in the phone of "Chela" a known smuggler in the Imperial Beach area who uses horses to smuggle people into the United States.  She was introduced to "Chela" a few days before her arrest.  On June 3 MARTINEZ said that ERNEST GUERRERO RIVERA picked her up at her cousin's where she had been staying.  MARTINEZ stated that GUERRERO is a mutual friend of "Chela" and herself. MARTINEZ stated that she meet GUERRERO  who took her to a ranch located on Hollister Street where she stated that they fed the horses and got them ready to ride them.

MARTINEZ stated that MARTINEZ and GUERRERO mounted one horse and an unknown man mounted another horse.  MARTINEZ stated she did not know who the male rider was.  MARTINEZ stated that while GUERRERO was showing her the area she lost sight of the other individual riding the other horse.  MARTINEZ stated that after a few minutes the individual on the other horse re-appeared.  When questioned about the other rider MARTINEZ stated she saw him fall off the horse but she and QUERRERO kept going.

The witness who is the subject of this motion JOSE GUADALUPE  GONZAGA CEJA (hereafter "Material Witness") was detained and identified as SOLEDAD MARTINEZ JIMENEZ and ERNEST GUERRERO RIVERA as the individuals on the other horse who were guiding him into the United States.  They were all detained.

The material witness and defendants were transported to the Border Patrol station, read their Miranda rights, stated they understood their rights and were willing to make statements about the offense without an attorney being present.

JOSE GUADALUPE GONZAGA CEJA were detained for prosecution of the defendants.

JOSE GUADA LUPE GONZAGA CEJA indicates to me that he has family in Mexico who need his efforts and attention to support the families left behind in Mexico. He came to the United States to work and send money back to Mexico to support is family.

He indicated to me he has no family or friends in the United States that could assist the witness in posting a material witness bond and therefore will remain in custody until the defendant pleads guilty or his testimony is preserved by a video deposition.

It is unnecessary to keep the Material Witness in custody because his testimony can be preserved through the use of a videotape deposition. The Material Witness therefore requests a court order that testimony of the Material Witness JOSE GUADALUPE GONZAGA CEJA be preserved through the use of videotape deposition and, thereafter, that the material witness be allowed to return to Mexico.

## II.

**THE TESTIMONY OF THE MATERIAL WITNESS CAN BE SECURED BY VIDEOTAPE DEPOSITION AND THERE IS NO COMPELLING REASON TO KEEP THEM IN THIS COUNTRY**

Section 3144 of Title 18 of the United States Code provides:

No material witness may be detained…if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.

A material witness may request that his deposition be taken and that he be released at the conclusion of the deposition. [Federal Rules Crim. P. 15(a)]. Where the material witness' motion demonstrates his testimony "can be adequately secured by deposition" and that "further

detention is not necessary to prevent a failure of justice" the court *must* order his deposition and prompt release.[1] *Torres-Ruiz v. United States* 120 F.3d 933, 935 (9th Cir. 1997) [citing <u>Aguilar-Ayala v. Ruiz</u> 973 F.2d 411, 413 (5th Cir. 19920]. <u>*See also,*</u> 8 U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure 15.

1. <u>The Material Witness' Testimony Can Be Adequately Secured By Deposition</u>

The Material Witness should not be detained because their testimony can be adequately secured by deposition. This is a routine alien smuggling case. Based on interviews with the Material Witness and the report submitted by the arresting agency, the facts to which the Material Witness is competent to testify are straightforward. (See Mayer Declaration at Para. 7-8). He identifies the two defendants as helping him get into the United States on horse back. (See Mayer Declaration at Para. 7). The Government's case does not depend on the testimony of the Material Witness alone. Law enforcement agents identify the two defendants helping the material witness when apprehended (See Mayer Declaration at Para. 8). Neither the Material Witnesses nor their counsel have been informed by either the government or defense attorneys of any reason why their testimony cannot be adequately secured by deposition. (See Mayer Declaration Para. 9).

2. <u>Further Detention of the Material Witness Is Not Necessary To Prevent a Failure of Justice</u>

Deposition of material witness may be used at trial in criminal cases, so it is only in *exceptional circumstances*, where the interests of justice will be denied, that a videotape deposition is not appropriate. *See Torres-Ruiz v. United States* 120 F.3d at 936 (9th Cir. 1997); 8

---

[1] While a witness may be detained for a reasonable period of time, the court must vigilantly guard an undocumented alien's "overriding liberty interest" and schedule a videotape deposition at the earliest possible time. <u>See, Aguilar-Ayala v. Ruiz</u>, 973 F.2d 411, 419 (5th Cir.1992).USDCT not and mo video

1  U.S.C. sec. 1324(d), Federal Rules of Evidence 804, and Federal Rules of Criminal Procedure
2  15.
3      Defendants may be present at the videotape deposition and therefore have a full and fair
4  opportunity to confront and cross-examine the witness.  The videotape provides sufficient indicia
5  of reliability to afford the trier of fact a satisfactory basis for evaluating the truth of a statement.
6  *Dutton v. Evans* 400 U.S. 89 (1970).
7      The government or defendant can effectuate the detention of a material witness upon a
8  showing that (1) the material witness will, in all likelihood, be unavailable to testify for trial, and
9  (2) that the use of deposition testimony will deny the defendant a fair trial and that live testimony
10  would somehow be significantly different.  *See Aguilar-Ayala v. Ruiz* 973 F.2d 413 (5th Cir.
11  1992), *United States v. Humberto-Rivera* 859 F.2d 1204, 1208 (4th Cir. 1988).  That would be a
12  difficult burden in this case because the Material Witnesses have indicated they will voluntarily
13  return for trial.  (See Mayer Declaration at para. 11)[2]
14      Neither the Material Witness nor his counsel has been informed by either the government
15  or defense attorney(s) of any reason why detention is necessary to prevent a failure of justice.
16  (See Mayer Declaration at Para. 9 and 10)
17      For these reasons, the Material Witnesses request that the Court immediately order the
18  taking of his videotape deposition, and thereafter that they be immediately returned to their
19  country of origin.

**III.**

---

[2] The government would undoubtedly take reasonable steps to secure the witness's testimony at trial by personally subpoenaing the witness, providing travel costs, and arranging for legal re-entry of the alien (See United States v. Eufracio-Torres 890 F.2d 266, 270.

-8-  08 CR 2034 IEG

**A MATERIAL WITNESS MAY NOT BE DETAINED IF THE TESTIMONY OF SUCH WITNESS CAN BE SECURED BY DEPOSITION, ABSENT A SHOWING OF A FAILURE OF JUSTICE**

"No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can be secured by deposition, and if further detention is not necessary to prevent a failure of justice." 18 U.S.C.S. sec. 3144. "Upon a such a showing, the district court **must** order [the material witness'] deposition and prompt release." *Torres_Ruiz v. United States District Court for the Southern District of California,* 120 F3d 933, 935 (9th Cir. 1997) (*quoting Aguilar-Ayala v. Ruiz,* 973 F.2d 411, 413 (5th Cir. 1992)) (emphasis in original).

Federal Rules of Criminal Procedure, Rule 15(a)(2), provides that "[a] witness who is detained under 18 U.S.C. sec. 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness signs under oath the deposition transcript."

Prolonged incarceration of the material witness solely because of his/her inability to secure bond violates the unambiguous language of the statue and straightforward rulings of the Courts of Appeal prohibiting such practices. "[I]t is clear from a conjunctive reading [Federal Rules of Criminal Procedure, Rule 15(a)] with 18 U.S.C. Section] 3144 that the discretion to deny the motion is limited to those instances in which the deposition would not served as an adequate substitute for the witness' live testimony: that a failure of justice would ensue were the witness released. Absent a failure of justice, the witness must be released." *Torres-Ruiz*, 120 F.3d at 935 (*citing, Aguilar-Ayala*, at 413 (internal citations and quotations omitted)(emphasis added).

**IV.**

**THE BURDEN IS ON THE DEFENDANTS TO SHOW THE NEED FOR A VIDEO DEPOSITON**

To defeat a motion for video deposition of the material witness, the burden is on the opposing party to show admission of deposition testimony will result in a "failure of justice." 18 U.S.C.S. sec 3144; Torres-Ruiz, at 935.  To meet this burden, the defendants must make a plausible showing the witness' testimony would be both material and favorable to their defense. *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982).

V.

**A MATERIAL WITNESS DOES NOT HAVE TO SHOW EXCEPTIONAL CIRCUMSTANCES**

The plain language of Federal Rules of Criminal Procedure Rule 15(a)(2), demonstrates that a material witness who files a motion for video deposition is not required to demonstrate exceptional circumstances.  Where a material witness moves for a Rule 15 deposition, she need not show such "exceptional circumstances."  *United States v. Chen,* 214 F.R.D. 578, 579 (N.D. Cal. 2003); *see also*, *Aguilar-Ayala v. Ruiz*, 973 F.2d at 420 (5th Cir. 1992)(ff. 6); *United States v. Allie*, 978 F.2d 1401, 1404 (5th Cir. 1992).  Any confusion regarding the requirement of exceptional circumstances was clarified in 2002 when Congress amended Rule 15 to distinguish motions brought by material witnesses for depositions from motions brought by other parties. *United States v. Chen*, 214 F.R.D. at 580 (ff 2).  Indeed, it is only where parties other than the detained material witness file a motion for the witness' deposition that a showing of exceptional circumstances is required.  *See, Fed. Rule Crim. Pro., Rule 15(a)(1); see also, Chen*, 214 F.R.D. at 579; *Allie*, 978 F.2d at 1404.

However, assuming for augment sake that a showing of exceptional circumstances is required, it is well established that prolonged incarnation is in and of itself sufficient to meet this

-10-                                                                08 CR 2034 IEG

requirement.  *United States v. Rivera,* 859 F.2d 1204, 1207 (4th Cir. 1988); *see also, Chen*, 214 F.R.D. at 580-581.

## VI.

## THERE IS NOT SIXTH AMENDMENT VIOLATION

Courts have consistently upheld the principle that prior-recorded testimony later admitted at trial does not violate a defendant's Sixth Amendment confrontation rights so long as: (1) there is some exceptional circumstance where, in the interests of justice, it is necessary to take and preserve testimony outside the court; (2) the prior testimony was given at a hearing, proceeding or deposition; (3) an authorized person put the witness under oath; (4) the defendant had a right to be present; (5) the defendant was represented by counsel who was given a complete and adequate opportunity to cross-examine the witness; and (6) the witness meets the criteria for unavailability.  See Fed.R. Civ. P. 28 and 30; Fed. R. Evid. 804(a); *see also California v. Green*, 399 U.S. 149, 165-166 (1970); *Torres-Ruis* at 933; *Aguilar-Ayala* at 413.

## VII.

**IF THE COURT DENIES THE MATERIAL WITNESSES' REQUEST TO TAKE THEIR VIDEOTAPE DEPOSITION, THEY REQUEST THAT THE GOVERNMENT PROVIDE THEM WITH A STATEMENT OF REASONS WHY THEY HAVE TO REMAIN IN CUSTODY**

Where a witness has been held in custody for more than 10 (ten) days, the government has an obligation to prepare a biweekly report stating the reasons why such witness should not be released with or without the taking of a deposition. [Fed. Rules Crim. Proc., Rule 46(g)].

The Material Witness is not aware of any reason why he should remain in custody, but to the extent the government knows of any such reason, he hereby requests that the government provide him with a copy of a biweekly written report indicating these reasons.

## VIII.

-11-                                         08 CR 2034 IEG

**CONCLUSION**

For the foregoing reasons, the Material Witness JOSE GUADALUPE GONZAGA CEJA respectfully requests that their Motion for the Taking of Videotape Deposition be granted. In the alternative, the witness requests he immediately be provided with a statement of reasons why he needs to remain in custody.

Dated: June 23, 2008                         s/ Wayne C. Mayer
                                             Wayne C. Mayer
                                             Attorney for Material Witnesses
                                             JOSE GUADALUPE GONZAGA CEJA

**PROOF OF SERVICE**

Case Name:   <u>U.S.A. vs. SOLEDAD MARTINEZ JIMENEZ aka Soledad Martinez Sandoval, ERNEST GUERRERO RIVERA</u>;   Case Number:   08 CR 2034 IEG

I am employed in the County of San Diego, State of California and over the age of eighteen years.  I am not a party to the within action.  My business address is 4619 Van Dyke Avenue, San Diego, California 92116.

I served the document(s) listed below on opposing counsel by causing to be delivered a efile copy thereof to the office of the Clerk, 880 Front Street, San Diego, California 92189 and served by United States first class mail postage prepaid on the parties listed herein.

<u>Date Served:</u>  June 23, 2008
<u>Documents Served:</u>
- NOTION OF MOTION AND MOTION FOR VIDEO TAPED DEPOSITION OF JOSE GUADALUPE  GONZAGA CEJA;
- POINTS AND AUTHORITIES IN SUPPORT OF MATERIAL WITNESS JOSE GUADALUPE GONZAGA CEJA's  MOTION FOR VIDEO TAPED DEPOSITION;
- DECLARATION OF WAYNE C. MAYER IN SUPPORT OF MATERIAL WITNESS JOSE GUADALUPE  GONZAGA CEJA's MOTION FOR VIDEO TAPED DEPOSITION;
- ORDER  VIDEO TAPED DEPOSTION OF MATERIAL WITNESS JOSE GUADA LUPE GONZAGA CEJA;
- PROOF OF SERVICE.

<u>Parties Served:</u>        Michelle Pettit, Assistant United States Attorney; Karen P. Hewitt, United States Attorney
I also caused an additional copy to be served by email and fax on the attorney(s):

Victor_Pippins@fd.org
Victor Pippins, Esq.            Fax: 619-687-2666
Federal Defenders, Inc.
225 Broadway, Ste. 900
San Diego, CA 92101

Efile.dkt.gc2@usdoj.gov
Michelle Pettit, Esq.            Fax: 619-235-2757
Assistant United States Attorney
880 Front Street, Fifth Floor
San Diego, CA 92101

scottpactor@yahoo.com
Scott Pactor, Esq.
Law Offices of Scott Pactor
110 W. C Street, Ste. 2108
San Diego, CA 92101

Dated: June 23, 2008              <u>s/Wayne C. Mayer</u>
                                  Wayne C. Mayer

08 CR 2034 IEG

1  WAYNE C. MAYER (62031)
   Law Offices of Wayne C. Mayer
2  4619 Van Dyke Avenue
   San Diego, CA 92116
3  (619) 281-9263
   fax (619) 281-2963
4

5  Attorney for Material Witnesses:  JOSE GUADALUPE GONZAGA CEJA

6

7

8
                    UNITED STATES DISTRICT COURT
9
                    SOUTHERN DISTRICT OF CALIFORNIA
10

11

12
   UNITED STATES OF AMERICA,          ) Case No.: 08 CR 2034 IEG
13                                     )
            Plaintiff,                 ) DECLARATION OF ATTORNEY WAYNE
14                                     ) C. MAYER IN SUPPORT OF MATERIAL
       vs.                             ) WITNESS JOSE GUADALUPE GONZAGA
15                                     ) CEJA's  MOTION FOR VIDEO TAPED
   SOLEDAD MARTINEZ JIMENEZ aka        ) DEPOSITION
16 Soledad Martinez Sandoval,          )
                                       ) DATE: July 15, 2008
17          Defendant(s).              ) TIME: 9:30 a.m.
                                         DEPT: Magistrate Papas
18

19
       I, Wayne C. Mayer, declare:
20
   I am the attorney appointed to represent the material witness (es) JOSE GUADALUPE
21
   GONZAGA CEJA in the Prosecution of defendants above referenced;
22
   1. On or about June 3, 2008, the material witness was detained by the United States Border
23
      Patrol in connection with the arrest of defendants in the above-entitled case. The
24
      defendants were charged with intent to violate the immigration laws of the United States,
25
      knowing and in reckless disregard of the fact that aliens had come to, entered and

remained in the United States in violation of law, did transport and move said aliens within the United States in furtherance of such violation of law, in violation of Title 8 U.S.C. sec. 1324 (a)(2)(B)(ii). The material witness was observed/ discovered along the United State and Mexico border riding on horse back and in the company of defendants.

2. Material witness stated he is a citizen and national of Mexico without valid immigration documents to enter or remain in the United States legally. He indicated he was to pay a smuggling fee. He admitted that the defendants MARTINEZ JIMENEZ aka Martinez Sandoval and ERNESTO GUERRERO RIVERA were his guides assisting the witness to cross into the United States;

3. I have made a diligent search to locate friends or family in the United States who could assist the material witnesses;

4. A complaint charging the defendants with smuggling illegal aliens was filed June 5, 2008;

5. The defendants were thereafter indicted and the defendant arraigned on the indictment in this case and is now set for motions in U. S. District Court for the Southern District of California June 23, 2008 before Judge Gonzalez;

6. During my interview with the material witness he indicated he had come to the United States in search of employment in order to support his needy family that remained behind in Mexico and he needed to work to support his family;

7. The facts to which the material witness would testify are straight forward. He identifies both defendants as assisting him in being smuggled on horse back into the United States;

8. The defendants denied knowing the material witness and both indicated the material witness was trying to attach himself to them. The agents watching the three on horseback

observed them converse with each other on several occasions during the times that they rode together;

9. I have not been advised by either government or defense counsel of any reasons why the witness' testimony cannot be adequately secured by deposition;

10. I have not been advised by either government or defense counsel of any reason why a detention is necessary to prevent a failure of justice;

11. The material witness indicates to me he is willing to return to the United States for trial in this matter should it become necessary;

12. The parties have not been able to negotiate a resolution of this matter or stipulate to a date for a video deposition in order to facilitate the release of the material witness and their return to his country of origin and I believe that because of the relationship of the various parties this case is likely to proceed to trial;

13. He indicated to me he has no family or friends in the United States that could assist the witness in posting a material witness bonds and therefore will remain in custody until the defendant pleads guilty or his testimony is preserved by a video deposition.

14. Material witness stated he is a citizen and national of Mexico without valid immigration documents to enter or remain in the United States legally. He indicated he was to pay a smuggling fee. He indentified both defendants as his guides, that they were giving orders, and giving instructions and explaining to the witness what they could expect as they crossed into the United States;

15. I have made a diligent search to locate friends or family in the United States who could assist the material witness without success;

1  16.  I make this declaration under penalty of perjury and the laws of the United States of
2  America and California.

3  Dated: <u>May 22, 2008</u>              <u>s/ Wayne C. Mayer</u>
                                            Wayne C. Mayer
4                                           Attorney for Material Witnesses