```
 1  KAREN P. HEWITT
    United States Attorney
 2  STEVE MILLER
    Assistant U.S. Attorney
 3  California State Bar No. 138020
    United States Courthouse
 4  940 Front Street, Room 5152
    San Diego, California  92189-0150
 5  Telephone: (619) 557-5432
    email: steve.miller2@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

                    UNITED STATES DISTRICT COURT

                   SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           )<br>                                     )<br>              Plaintiff,             )<br>                                     )<br>                   v.                )<br>                                     )<br> SOLEDAD MARTINEZ-JIMENEZ(1),        )<br> ERNEST GUERRERO-RIVERA (2),         )<br>                                     )<br>              Defendants.            )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>                                     )<br>_____) | Criminal Case No. 08cr2034-IEG<br><br>DATE: September 15, 2008<br>TIME: 11:30 a.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS AND *IN LIMINE* MOTIONS TO:<br><br>(1) DISMISS INDICTMENT FOR GRAND JURY MISINSTRUCTION;<br>(2) DISMISS COUNT ONE OF INDICTMENT;<br>(3) SUPPRESS FRUITS OF UNLAWFUL DETENTION;<br>(4) SUPPRESS EVIDENCE FROM SEARCH OF CELLULAR PHONE;<br>(5) SUPPRESS STATEMENTS;<br>(6) PRECLUDE GOVERNMENT FROM INTRODUCING STATEMENTS REGARDING SMUGGLING ARRANGEMENTS;<br>(7) EXCLUDE EXPERT WITNESS FOR GOVERNMENT;<br>(8) PREVENT COPY OF INDICTMENT FROM BEING SENT INTO THE JURY ROOM;<br>(9) ALLOW ATTORNEY CONDUCTED VOIR DIRE;<br>(10) ORDER PRODUCTION OF GRAND JURY TRANSCRIPT;<br>(11) ORDER PRODUCTION OF JENKS MATERIAL PRIOR TO TRIAL;<br>(12) EXCLUDE DEMEANOR EVIDENCE;<br>(13) ALLOW EACH JUROR TO HAVE A COPY OF JURY INSTRUCTIONS;<br>(14) PRECLUDE ADMISSION OF 404(B) AND 609 EVIDENCE;<br>(15) EXCLUDE POVERTY EVIDENCE; AND<br>(16) EXCLUDE GOVERNMENT CASE AGENT |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steve Miller, Assistant United States Attorney, and hereby files its response and opposition to defendants' above-referenced motions. Said response is based upon the files and records of this case, together with the attached statement of facts, memorandum of points and authorities.

I.

STATEMENT OF FACTS

On June 3, 2008, Border Patrol Agents were using a scope to observe the area along the border fence from an area called "Goat Canyon" to the Border Field State Park. At approximately 5:00 p.m., an agent saw two mounted horses traveling westbound. One horse carried both of the defendants and the second horse carried another rider. The horses traveled together to an area known as Research Trailer road and then turned south towards Goat Canyon.

The agent looked away to other areas along the area and, a few minutes later, the agent observed the one horse without the defendants by the hitching post area without the other horse and rider. The agent looked toward the south and located the other horse and rider in a creek bed. The agent saw the singe rider came out of the brush and headed toward the defendants. They stopped a few feet from each other and talked for a couple of minutes.

The agent looked away to police the area. When the agent looked back toward the single rider, the rider had lost control of the horse and the agent observed that the rider was not the same person the agent observed going into Goat Canyon. The agent observed that the defendants on the other horse were trying to call out to the single

rider and then observed the horse run away from the single rider. The Scope operator radioed these observations to other agents because the agent was aware that there had been recent incidents of "horse swapping" to facilitate alien smuggling.

Another agent responded to the area and the defendants rode away as soon as the marked Border Patrol car approached. The agent contacted the single rider and identified himself as Jose Guadalupe Gonzaga-Ceja. Mr. Gonzaga-Ceja admitted to the agent that he had just crossed the border over the fence and that he was being smuggled on horseback.

The agent contacted the defendants and both denied knowing Mr. Mr. Gonzaga-Ceja. A records check revealed that defendant Martinez-Sandoval was on supervised release for a prior alien smuggling conviction.

During Mr. Gonzaga-Ceja's deposition, he revealed that he traveled from Jalisco to Tijuana approximately two weeks before his apprehension. Prior to his travel, Mr. Gonzaga-Ceja spoke with his brother over the telephone about the smuggling arrangements. Once Mr. Gonzaga-Ceja arrived in Tijuana, he contacted "El Verde" at the Hotel Carrillo. Mr. Gonzaga-Ceja said he contacted El Verde on behalf of his brother. El Verde told Mr. Gonzaga-Ceja that he was to be crossed by horse and that he was charging $2500. El Verde took Mr. Gonzaga-Ceja to the border fence within sight of the Bull Ring. El Verde instructed Mr. Gonzaga-Ceja that when two people arrived on horses, he was to jump the fence and get on the horse.

When Mr. Gonzaga-Ceja saw the horses, he jumped over the fence and landed next to a horse. The defendants were on the other horse approximately ten steps away. The single rider of the horse, Mr.

Gonzaga-Ceja eventually rode and gave Mr. Gonzaga-Ceja a hat and then jumped over the fence back into Mexico. (Mr. Gonzaga-Ceja's boots were provided to him by El Verde before they went to the border fence) After Mr. Gonzaga-Ceja mounted his horse, defendant Guerrero-Rivera waved to him in a "follow me" gesture. Mr. Gonzaga-Ceja followed the defendants on horseback for about ten minutes. After about ten minutes, Mr. Gonzaga-Ceja threw him off. The defendants stopped their horse and told Mr. Gonzaga-Ceja "you don't know us." Shortly thereafter, the Border Patrol Agent made contact with Mr. Gonzaga-Ceja and learned about the horse swapping.

II

POINTS AND AUTHORITIES

A. THERE IS SUFFICIENT EVIDENCE TO STATE A CLAIM FOR BRINGING TO UNDER COUNT 1

Defendant argues this court should dismiss Count 1 of the indictment for failure to state a claim. He argues that under United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007) and United States v. Hernandez-Orellana, ___ F.3d ___ 2008 WL 3852623 (9th Cir. 2008), that the evidence shows that he only acted after the "bringing to" was completed.

The flaw in defendant's argument is that both are liable for assisting "El Verde" in bringing Mr. Gonzaga-Ceja to the United States because there were very detailed and intricate arrangements made before Mr. Gonzaga-Ceja entered the United States over the fence. El Verde told Mr. Gonzaga-Ceja that he was going to be smuggled by horse. At the fence, before he was "brought to" the United States, Mr. Gonzaga-Ceja was instructed to wait until the horses came and then jump the fence. Before the bringing to, Mr. Gonzaga-Ceja received

boots in anticipation of going over the fence. The horse and the escort were pre-arranged before El Verde brought Mr. Gonzaga-Ceja to the United States. Consequently, all the defendants' actions were placed in motion prior to the completion of the bringing to offense and they are still liable as aiders and abetters in Count 1.

    B.    THE GOVERNMENT WILL NOT DISCLOSE THE LOCATION OF THE SURVEILLANCE SCOPE

Defendant moves this court to compel the disclosure of the location of the Border Patrol's scope. The Government requests this court deny defendant's motion on the grounds of executive privilege. The location of the agent during her observation is immaterial to the case. However, as this court is well aware, smuggling organizations conform their conduct around the practices of law enforcement. The novel method of smuggling in this case is a prime example of the smugglers' ingenuity. Once the location of the scope is compromised, smugglers will enact counter-measures to avoid being observed from that outpost. Consequently, defendant's motion to disclose the location of the scope should be denied.

    C.    THE TRIAL SHOULD NOT BE SEVERED

Defendants move this Court to sever their trial from the codefendant. Rule 8(b) of the Federal Rules of Criminal Procedure states:

> Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendant's may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

//

//

Rule 14 of the Federal Rules of Criminal Procedure states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at trial.

The general rule is that defendants charged together should be tried together. Parker v. United States, 404 F.2d 1193, 1196 (9th Cir. 1968), cert. denied, 394 U.S. 1004 (1968). One reason for this is for the efficient administration of justice and judicial resources. Id. at 1196.

The primary basis of GUERRERO's motion to sever defendants is a claim that he will be prejudiced from the admission of his codefendant's statements. This assumes that the Government will attempt to use one defendant's statements against another defendant. This assumption is in error because it is not possible under Bruton v. United States, 391 U.S. 123 (1968), to use a codefendant's statements as affirmative proof of another defendant's guilt if there is a chance that the codefendant will not be subject to cross-examination. The remedy, however, is not severance, but a redaction of the codefendant's confession to include only those statements that incriminate the confessing codefendant. In this case, the Government would redact any statements by either defendant that incriminate or exculpate the other codefendant. Therefore, defendant's motion to sever on this basis should be denied.

The primary basis of MARTINEZ-JIMENEZ's motion is the claim that the parties will offer mutually exclusive defenses. This issue was

resolved by United States v. Zafiro, 506 U.S. 534 (1993), when the Supreme Court held that mutually exclusive defenses are not per se prejudicial. Absent a specific showing beyond defendant's bald statement that the defenses are exclusive, this court will be presented with a situation similar to the one presented in United States v. Gillam, 167 F.3d 1273 (9th Cir. 1999), where the claim was asserted without any affirmative evidence. What defendant really seeks is the ability to claim that her codefendant is the guilty party without the embarrassment of doing so in the personal presence of that friend in court. Defendant's claim of mutually exclusive defenses is insufficient basis to justify a severance.

To the extent that defendants also argue that they will be prejudiced by guilt by association, this is another bald statement without support and presupposes that the jury cannot follow the law and that this court cannot craft limiting instructions that cure any problems. Without more support behind a claim of prejudice, this court should deny defendants' motion to sever the trial.

### D. DEFENDANT'S MOTION TO DISMISS BECAUSE OF ALLEGED ERROR IN THE GRAND JURY INSTRUCTIONS SHOULD BE DENIED

Defendant argues that the indictment should be dismissed because of various instructions that were or were not given to the grand jury. United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), and United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005), are s dispositive on this issue and defendant's motion should be summarily denied.

Defendant's current motion attempts to distinguish Navarro-Vargas and has been the subject of much litigation in this district. This identical motion was denied by Judge Moskowitz in the case of United

States v. Martinez-Covarrubias, 07cr0491-BTM. Rather than filing the Government's standard response brief, which would invariably necessitate a motion for permission to file a response and opposition of over 25 pages, the Government adopts the factual findings and the legal reasoning of Judge Moskowitz and recommends this court summarily deny defendant's motion.

E. DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED

Defendant argues that this court should suppress the evidence because the search and seizure was illegal and in violation of her Fourth Amendment Rights. Defendant argues that the detention was without reasonable suspicion.

The Government does not dispute that an investigative stop or detention is only valid if an officer has a reasonable suspicion, based on specific and articulable facts, that (1) criminal activity may be afoot, and (2) the person about to be detained is connected with the possible criminal activity. Reasonable suspicion under such circumstances is determined by an objective standard taking into consideration the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002); Maryland v. Macon, 472 U.S. 463, 470-71 (1985); United States v. Cortez, 449 U.S. 128, 136-39 (1981); Texas v. Brown, 460 U.S. 730 (1983); Scott v. United States, 4672 U.S. 128, 136-39 (1978); Terry v. Ohio, 392 U.S. 1, 22 (1968); People v. Gonzales, 216 Cal. App. 3d 627, 633 (1985); People v. McGaughran, 25 Cal. 3d 577, 582 (1979); People v. Superior Court (Simon), 7 Cal. 3d 186, 200 (1972).

Arvizu and Ornelas v. United States, 517 U.S. 690, 699 (1996). Ornelas recognized that "reasonable suspicion" cannot be precisely

1 articulated. <u>Arvizu</u>, 534 U.S. at 274, <u>Ornelas</u>, 517 U.S. at 695.
2 "Reasonable suspicion" and "probable cause" are commonsense,
3 nontechnical concepts that deal with "'the factual and practical
4 considerations of everyday life on which reasonable and prudent men,
5 not legal technicians, act'" <u>Ornelas</u>, 517 U.S. at 695, <u>Illinois v.
6 Gates</u>, 462 U.S. 213, 231 (1983), (quoting <u>Brinegar v. United States</u>,
7 338 U.S. 160, 175 (1949).)

8 "In the context of Border Patrol searches, the factors to be
9 considered in determining whether 'reasonable suspicion' exists to
10 justify stopping a vehicle include, but are not limited to: 1)
11 characteristics of the area; 2) proximity to the border; 3) usual
12 patterns of traffic and time of day; 4) previous alien or drug
13 smuggling in the area; 5) behavior of the driver, including obvious
14 attempts to evade officers'; 6) appearance or behavior of passengers;
15 7) model and appearance of the vehicle; and, 8) officer experience."
16 <u>United States v. Garcia-Barron</u>, 116 F.3d 1305, 1307 (9th Cir. 1997)
17 citing <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 885 (1975).

18 In the present case, defendant MARTINEZ-JIMENEZ was riding on a
19 horse that was observed riding in tandem with another horse that
20 switched riders near the international border. Once the Border Patrol
21 learned that the material witness had just entered into the United
22 States and knew that "horse swapping" was a method of smuggling, the
23 agents were entitled to investigate the other horse's involvement with
24 the smuggling venture. There was nothing unlawful about the
25 defendant's detention. Nor were the agents required to take
26 defendant's statements at face value.
27 //
28 //

**F. ANY EVIDENCE FROM THE CELL PHONES IS ADMISSIBLE EVEN IF IT WAS OBTAINED WITHOUT A WARRANT**

Defendant moves this court to suppress any evidence recovered from the cell phones the defendant's possessed because it was obtained without a warrant. Any evidence from the defendant's cell phones should not be suppressed because a warrant is not required to examine the cell phones that were seized in this case. The cell phone was seized after the agents had probable cause to arrest defendant for smuggling aliens. Once there was probable cause to arrest, then the agents are entitled to seize and search the evidence of the crime scene. Agents are entitled to search the mode of transportation and seize all the items and documents for later determination of relevance to the case. Likewise, the agents are entitled to search the defendants and all of their possessions. Though the relevance of the items may not be readily apparent at the time of arrest, the evidence may be of value once the case fleshes out. For instance, inside one defendant's purse was her police ID. Inside the SUV were documents showing that the other defendant owned the vehicle. All of the items at the crime scene, including their cell phones, may be kept for examination in connection with the case.

The contents of defendant's cell phone is made relevant by the fact that it was possessed by a woman who was connected to an alien who just hopped the fence to get on a horse that was in tandem with defendant's horse. There is no functional difference between the contents of her cell phone and the contents of her purse, wallet, pocket or saddle bag. A cell phone is no different than a paper notebook that contains names and numbers of friends and contacts. The log of sent and received calls is no different than a paper receipt

that showed that defendant bought gas at a particular station at a particular date and time. To follow defendant's argument to its illogical conclusion, she would require a warrant every time the agent wants to open a defendant's wallet or notebook that had been seized at the arrest. This court would have to issue search warrants every time the agent wanted to view the car or look in the glove box. The contents of a cell phone is no different than any other container that holds incriminating documentary evidence. Defendant's motions to suppress any evidence in the cell phones should be denied.

G.  **DEFENDANT'S STATEMENTS ARE ADMISSIBLE**

Defendant moves this court to suppress her statements to the Border Patrol Agent who stopped her because they were obtained in violation of his <u>Miranda</u> rights. The Government is aware of this court's practice of holding an evidentiary hearing regarding motions to suppress statements. The Government will establish that defendant's statements were obtained in compliance with <u>Miranda</u> and that they were knowing and voluntary.

H.  **EVIDENCE OF THE SMUGGLING ARRANGEMENTS ARE ADMISSIBLE**

Defendant moves this court to suppress evidence regarding the arrangements that the material witness made. The evidence is directly relevant and admissible to establish that defendants and El Verde were involved in smuggling aliens for financial gain. Prior to the material witness jumping the fence, there were intricate arrangements made to get him across by using the "horse swap" ruse. The statements of the material witness' brother and El Verde were made during the conspiracy to transport the material witness over the fence. Furthermore, the extent of the arrangements that the material witness made is relevant to show the extent and efficiency of the smugglers'

organization. This is directly relevant because it leads to the reasonable inference that individuals would not go to this kind of effort for other than financial gain. Defendant's motion to exclude the evidence should be denied.

### I. THE GOVERNMENT WILL PROVIDE EXPERT NOTICE PRIOR TO TRIAL

Defendant moves this court to exclude expert testimony. Most of the evidence that could be considered "expert" would be related to the method of "horse swapping." That evidence would be adequately offered by the material witness' testimony. To the extent that agents relate their past knowledge or experience in relation to "horse swapping," that would not really qualify as expert testimony because it would not be offered to establish defendant's acted in conformity with known practices. However, the Government reserves the right to offer expert evidence if the issue is raised in cross-examination and the defendant's questioning necessitates clarification of any particular point.

### J. INDICTMENT IN THE JURY ROOM

Defendant moves to exclude a copy of the indictment from the jury room during deliberations. The Government submits this issue to this court's ordinary custom and practice.

### K. ATTORNEY CONDUCTED VOIR DIRE

The Government is aware that this court sometimes grants attorney conducted voir dire. The Government submits this issue to this court's customary practice.

//
//
//

L. <u>GRAND JURY TRANSCRIPTS</u>

Defendant moves to compel the production of the grand jury transcripts. The Government will not produce the grand jury transcripts because the grand jury witness will not testify at trial.

M. <u>JENCKS MAERIAL WILL BE PROVIDED</u>

Defendant moves to compel the production of Jencks material prior to trial. To the extent a witness has prior statements, the Government will provide those. The Government need not provide Jencks material of the material witness' deposition because those statements are not in the exclusive possession of the Government and defendants must obtain their own transcripts. The Government will provide a copy of the video of the deposition.

N. <u>EVIDENCE OF NERVOUSNESS IS ADMISSIBLE</u>

Defendant moves to exclude evidence of any nervousness. To the extent defendant was nervous, the Government reserves the right to offer evidence of the objective signs and symptoms that allow a person to reach the conclusion that defendant was nervous. The Government does not intend to offer opinion evidence regarding conclusions deduced from those same signs and symptoms. However, defendant should not be allowed to reduce everyday lay observations into complicated scientific standards. Otherwise, no one would be able to recognize that someone was intoxicated unless he or she had an advanced degree in neuroharmacology or was a licensed forensic alcohol analyst. Lay witnesses are entitled to express their observations in commonly understood terms. Any observations that defendant was nervous should be admitted and the witness should be allowed to use the term nervous.

//

//

     O.    THE GOVERNMENT SUBMITS THE DECISION TO PROVIDE JURY INSTRUCTION TO THIS COURT

Defendant moves this court to provide a separate copy of the jury instructions to each juror. The Government has no objection to defendant's motion and submits this issue to this court's ordinary custom and practice.

     P.    404(B) AND 609 EVIDENCE

Defendant moves to exclude evidence under Rules 404(b) and 609. The Government intends to offer evidence of defendant's prior involvement in alien smuggling as affirmative evidence of an absence of mistake. Though the evidence would be classified as inextricably intertwined to the present case, to the extent that defendant MARTINEZ-JIMENEZ's prior phone calls to a known "horse swapping" alien smuggler, the Government gives notice of its intention to offer that evidence.

Both defendants have prior felony convictions. In the event that either defendant testifies, the Government will use the fact of the felony to impeach their credibility. If defendant MARTINEZ-JIMENEZ elects to testify, the Government will also examine the fact that she was involved in alien smuggling prior to being caught on the horse.

     Q.    POVERTY EVIDENCE

Defendant moves to exclude evidence of his financial condition. Essentially, defendant is seeking exclusion of poverty evidence. The government concedes that poverty evidence is inadmissible and does not intend to offer evidence of either defendants' poverty.

//
//
//

R.   <u>THE CASE AGENT WILL REMAIN IN COURT</u>

Defendant moves to exclude the Government's case agent. The Government is entitled to have a designated case agent remain at counsel table during trial.

## III

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that defendant's motions be denied and the Government motions be granted.

DATED:   September 8, 2008.

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    S/Steve Miller

    STEVE MILLER
    Assistant U.S. Attorney

|   |   |   |
|---|---|---|
| 1 | UNITED STATES OF AMERICA | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |

```
UNITED STATES OF AMERICA,        )   Criminal Case No. 08cr2034-IEG
                                 )
          Plaintiff,             )
                                 )   CERTIFICATE OF SERVICE
v.                               )
                                 )
SOLEDAD MARTINEZ-JIMENEZ (1),    )
ERNEST GUERRERO-RIVERA (2),      )
                                 )
          Defendant.             )
                                 )
```

IT IS HEREBY CERTIFIED THAT:

I, Steve Miller, am a Citizen of the United States over the age of eighteen years and a resident of San Diego county, California. My business address is 880 Front Street, San Diego, California 92101-8893. I am not a party to the above-entitled action. I have caused service of the Government's Response and Opposition to Defendant's Motions and *In Limine* Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies them.

1. Victor Pippins, Michelle Betancourt, Federal Defenders
2. Scott Pactor

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-EFC participants on this case n/a the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 8, 2008.

                                                s/Steve Miller
                                                STEVE MILLER